[Cite as *State v. Nichols*, 2022-Ohio-2895.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2021-CA-46 |
| | : | |
| v. | : | Trial Court Case No. 2021-CR-17 |
| | : | |
| ROBERT ALLEN NICHOLS | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 19th day of August, 2022.

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Atty. Reg. No. 0069198, Assistant Prosecuting Attorney, Champaign County Prosecutor's Office, 200 North Main Street, Urbana, Ohio 43078
      Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 1717 Liberty Tower, 120 West Second Street, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Robert Allen Nichols, appeals from a judgment of the Champaign County Court of Common Pleas, which revoked his community control sanctions and sentenced him to 18 months in prison for domestic violence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

{¶ 2} On January 22, 2021, the State filed a bill of information charging Nichols with a fourth-degree-felony count of domestic violence. The charge stemmed from a domestic dispute between Nichols and his girlfriend, A.C., at their residence in Urbana, Ohio. A.C. reported to the police that an intoxicated Nichols had struck her on the face and the top of her head with his open hand because Nichols thought that she had been talking to another man on the telephone.

{¶ 3} On January 28, 2021, Nichols entered into a plea agreement with the State and pled guilty as charged in the bill of information. In exchange for Nichols's guilty plea, the State agreed to recommend having a presentence investigation report ("PSI") prepared before sentencing. The State also agreed to recommend the imposition of community control sanctions at the sentencing hearing on the conditions that Nichols's PSI did not reveal any criminal history unknown to the State and that Nichols was not charged with any additional criminal offenses during the pendency of his case. In addition, Nichols agreed to pay court costs and any court-appointed counsel fees that might be imposed by the trial court at sentencing. The parties also agreed that Nichols

was subject to the imposition of 12 months of potential postrelease control enhancement time.

{¶ 4} After being advised of the plea agreement, the trial court conducted a plea colloquy and accepted Nichols's guilty plea to domestic violence. The trial court also ordered a PSI and scheduled the matter for sentencing. On February 18, 2021, the trial court sentenced Nichols to five years of community control sanctions with standard and special conditions. The standard conditions included, but were not limited to, Nichols's following all orders of his supervising officer and conducting himself as a responsible, law abiding citizen. The special conditions imposed by the trial court required Nichols to do all the following:

1. Pay court costs and any fines imposed by the trial court (no fines were imposed);

2. Successfully gain admission to and complete the West Central Community Based Correctional Facility ("West Central") residential program;

3. Comply with cognitive behavior counseling and medication-assisted treatment programming for alcohol dependency;

4. Complete any aftercare programming after being released from West Central's residential program;

5. Obtain an assessment for and successfully complete alcohol dependency and anger management counseling as arranged by the Adult Parole Authority after being released from West Central's

residential program;

6. Comply with random drug screens;

7. Abstain from purchasing, possessing, or consuming alcohol and being present in bars;

8. Complete 100 hours of community service;

9. Register for OhioMeansJobs in order to receive help finding employment after being released from West Central;

10. Obtain and maintain tax-withholding employment; and

11. Have no contact with A.C.

{¶ 5} During his plea and sentencing hearings, Nichols advised the trial court that he could not read or write. At the sentencing hearing, Nichols told the trial court that his illiteracy prevented him from obtaining employment. Nichols's counsel also told the trial court that Nichols had said he was previously denied admission to West Central in a prior criminal case due to his illiteracy, but counsel could not verify whether that was in fact true. Despite this, Nichols's counsel advised the trial court that Nichols was willing to try West Central again. The trial court then sentenced Nichols to the five-year term of community control sanctions with the aforementioned standard and special conditions.

{¶ 6} Seven months after sentencing, Nichols's probation officer filed a "Notice of Supervision Violation" on September 21, 2021. In the notice, the probation officer alleged that Nichols had violated his community control sanctions by:

1. Having contact with A.C.;

2. Failing to attend all scheduled appointments with the Justice

Reinvestment Grant Program ("JRGP") as ordered by his supervising officer;

3. Threatening to kill and/or do bodily harm to another;

4. Failing to comply with the medication-assisted treatment program;

5. Failing to complete the aftercare programming arranged by the JRGP; and

6. Failing to register for OhioMeansJobs.

{¶ 7} On November 3, 2021, the trial court held a hearing on Nichols's alleged community control violations. At the hearing, Nichols's probation officer, Herbert Nicholson, testified that Nichols had been admitted into the West Central residential program, which Nichols completed in July 2021. Officer Nicholson testified that after Nichols was released from West Central, he received information from the Urbana Police Department and from Nichols's brother and mother indicating that Nichols had been having contact with A.C. Officer Nicholson testified that he discussed these allegations with Nichols in August 2021, and that Nichols had admitted to having contact with A.C. after he was released from West Central. Nichols's brother, Ernest Nichols, Jr., also testified at the hearing and confirmed that he had observed Nichols and A.C. together on more than one occasion. Ernest also testified that A.C. was then living with Nichols at his mother's residence.

{¶ 8} In addition to Nichols's having contact with A.C., Officer Nicholson testified that Nichols had not registered for OhioMeansJobs and that Nichols was not gainfully employed. Officer Nicholson further testified that after Nichols was released from West

Central, he had been convicted of disorderly conduct in the Champaign County Municipal Court; the State presented testimony from the victim of that offense. The victim testified that on August 17, 2021, he and Nichols had an argument over Facebook Messenger during which Nichols sent him voice-recorded messages that contained threats of harm. Specifically, the victim testified that Nichols had threatened to have his "step-dad" or "father-in-law" kill him and "make [his] body come up missing." Hearing Tr. p. 23-25. The victim testified that he had also been convicted of disorderly conduct for making threats back at Nichols during their argument.

{¶ 9} Officer Nicholson also testified that Nichols had failed to attend his West Central aftercare programming. Jessica Manuel, a coordinator for Champaign County's West Central JRGP, also testified at the hearing and confirmed that Nichols's aftercare programming had included the JRGP and other counseling. Manuel testified that Nichols had attended his JRGP meetings and rescheduled meetings when he missed one. However, Manuel testified that Nichols failed to follow through with the JRGP's treatment recommendations.

{¶ 10} In addition, Manuel testified that Nichols initially sought treatment at TCN Behavioral Health ("TCN") but failed to follow TCN's treatment plan. Manuel testified that on August 11, 2021, Nichols advised her that he had decided to switch from TCN to Mercy REACH, but he later reported that he did not like Mercy REACH and had decided to go back to TCN. Manuel testified that despite going back and forth between these treatment providers, Nichols did not comply with either TCN's or Mercy REACH's program.

{¶ 11} Manuel also testified that after Nichols was released from West Central's

residential program, he had failed to continue with his medication-assisted treatment. Manuel testified that Nichols had initially complied with his medication-assisted treatment while at West Central by receiving a Vivitrol shot on July 21, 2021. However, Nichols never returned to the clinic for another shot after his release from West Central. Manuel testified that Nichols told her that he had not gotten another shot because he did not have a ride to the clinic. Manuel testified that after hearing this excuse, she offered to get Nichols a ride to the clinic or to pay for Nichols to take the public transportation system; after Manuel made that offer, Nichols told her that he would be able to get his own ride to the clinic. Manuel also testified that Nichols reported getting a job at the Super 8 hotel in Bellefontaine, but that it did not qualify as tax-withholding employment.

{¶ 12} After considering the foregoing testimony, the trial court found that Nichols was guilty of all but one of the community control violations alleged in Officer Nicholson's "Notice of Supervision Violation." Specifically, the trial court found that Nichols was not guilty of failing to attend all scheduled appointments with the JRGP. The trial court did, however, find that Nichols was guilty of having contact with A.C., threating to kill and/or or do bodily harm to another; failing to comply with his medication-assisted treatment program, failing to complete the aftercare programming arranged by the JRGP, and failing to register for OhioMeansJobs.

{¶ 13} In light of its guilty findings, the trial court proceeded to sentencing. During sentencing, Nichols's counsel suggested that Nichols's illiteracy, impulsivity, and difficulty "functioning in society" should be considered in mitigation of punishment. Hearing Tr. p. 45. Nichols also advised the trial court that he had previously been evaluated as having

"mental retardation" and that he was "not smart." *Id.* at 46 and 50.

{¶ 14} Following these statements, the trial court had a discussion with Nichols regarding his mental abilities. During that discussion, Nichols told the trial court that he knew how to use Facebook on his cellphone and explained how he sent messages through Facebook Messenger using a dictation application that recorded and read back the words he spoke into his cellphone. Nichols also told the trial court that he could send and receive e-mails through Gmail, and that he played games such as bowling and darts on his cellphone. When asked by the trial court whether he understood what happens when someone violates the rules of society, Nichols, responded: "Somewhat, yes." *Id.* at 51. Nichols also confirmed that he understood "violence is not a good thing." *Id.*

{¶ 15} Based on the trial court's discussion with Nichols, and based on the fact that Nichols was able to follow instructions at West Central and successfully complete that program, the trial court determined that Nichols had been intelligent enough to understand what was expected of him. The trial court also determined that Nichols's trouble with impulsivity arose in unstructured settings. After these considerations, and after considering the hearing testimony, the PSI, documentation from West Central, and the purposes and principles of felony sentencing, the trial court revoked Nichols's community control sanctions and sentenced him to 18 months in prison. Nichols now appeals from that judgment, raising a single assignment of error for review.

**Assignment of Error**

{¶ 16} Under his assignment of error, Nichols does not dispute the fact that he

violated the conditions of his community control sanctions. Nichols instead contends that the trial court's judgment revoking his community control and sentencing him to prison was an abuse of discretion because the trial court failed to adequately consider his mental deficiencies when rendering that judgment. Nichols claims that his mental deficiencies, i.e., being illiterate and being unable to exercise impulse control, made it impossible for him to comply with the conditions of his community control. We, however, disagree with Nichols's claims.

{¶ 17} "The right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court." *State v. Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392, ¶ 13, citing *State v. Lewis*, 2d Dist. Montgomery No. 23505, 2010-Ohio-3652, ¶ 11. "Accordingly, we review the trial court's revocation of community control for an abuse of discretion." *Id.*, citing *State v. Morgan*, 2d Dist. Montgomery No. 26132, 2014-Ohio-5071, ¶ 11. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. Pate*, 2021-Ohio-1838, 173 N.E.3d 567, ¶ 36 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 18} In *State v. Johnson*, 2d Dist. Montgomery No. 22302, 2008-Ohio-4014, this court addressed a claim similar to the one Nichols has raised on appeal. In *Johnson*,

the defendant claimed that the trial court had abused its discretion by revoking his community control sanctions because the defendant's mental health issues prevented him from being able to complete the ordered treatment. *Id.* at ¶ 10. We found that when the trial court in *Johnson* announced its decision to revoke the defendant's community control, it "went into a lengthy monologue about [the defendant's] mental health claims[.]" *Id.* at ¶ 15. In doing so, the trial court expressed that it was specifically concerned with the issue of whether the defendant was unable to complete his treatment program because of depression. The trial court determined from its past dealings with the defendant that the defendant had some "mental difficulty" but found that there was nothing in the record indicating that the defendant's depression prevented him from going "about the daily chores of living" or from doing what was necessary to successfully complete the treatment program that was ordered. *Id.* Because the trial court considered the defendant's mental condition as a factor before revoking his community control sanctions, we found no abuse of discretion in the trial court's judgment. *Id.* at ¶ 16.

{¶ 19} Similar to *Johnson*, the trial court in this case considered Nichols's mental abilities before revoking his community control sanctions. For example, in assessing Nichols's alleged lack of intelligence, the trial court considered the fact that Nichols was proficient at using Facebook on his cellphone and was able to send messages through Facebook Messenger using a dictation application. The trial court also considered the fact that Nichols was able to play games on his cellphone and was proficient at sending and receiving e-mails using Gmail. The trial court further considered that Nichols had successfully completed the residential program at West Central, which indicated to the

trial court that Nichols had sufficient intelligence to follow the instructions that were given there. The trial court also considered the fact that Nichols struggled with impulsivity and acting on his emotions in unstructured settings.

**{¶ 20}** Given that the trial court considered all of these factors before revoking Nichols's community control, we find that Nichols's claim that the trial court failed to adequately consider his mental deficiencies before rendering its judgment lacks merit. Contrary to Nichols's claim otherwise, the record clearly establishes that the trial court carefully considered Nichols's mental abilities and impulsivity when rendering its judgment. Accordingly, there was no abuse of discretion in that regard.

**{¶ 21}** Furthermore, the trial court's judgment revoking Nichols's community control sanctions was reasonable. It has been held that " '[a] trial court does not abuse its discretion by revoking an offender's community control where the violation in question was one over which the offender had control.' " *State v. Noonan*, 12th Dist. Butler Nos. CA2018-10-203, CA2018-10-204, 2019-Ohio-2960, ¶ 19, quoting *State v. Tranter*, 12th Dist. Clermont No. CA2000-05-035, 2001 WL 290192, *3 (Mar. 26, 2001), citing *State v. Stockdale*, 11th Dist. Lake No. 96-L-172, 1997 WL 663688 (Sept. 26, 1997). In this case, all of Nichols's community control violations involved actions that were entirely within his control. For example, after completing the West Central residential program, Nichols chose to not follow through with the aftercare programming and medication-assisted treatment even though he was offered assistance in doing so. Nichols also chose to have contact with A.C. even though it was prohibited, chose to engage in disorderly conduct, and chose not to register for OhioMeansJobs even though he was ordered to do

so. Because all of these community control violations were within Nichols's control, and because the trial court found that Nichols struggled in unstructured settings, it was reasonable and not an abuse of discretion for the trial court to revoke his community control sanctions and sentence him to prison.

**{¶ 22}** Nichols's sole assignment of error is overruled.

## Conclusion

**{¶ 23}** Having overruled Nichols's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Samantha B. Whetherholt
Kristin L. Arnold
Hon. Nick A. Selvaggio