[Cite as *State v. Smith*, 2024-Ohio-2854.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


STATE OF OHIO,                                   :

    Appellee,                                   :                CASE NO. CA2023-09-064

    - vs -                                          :                O P I N I O N
                                                                     7/29/2024

                                                    :

SYDNEY G. SMITH, III,                            :

    Appellant.                                  :


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2020 CR 0051


Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nicholas Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.


**HENDRICKSON, J.**

{¶ 1} Appellant, Sydney Smith, III, appeals the decision of the Clermont County Court of Common Pleas revoking his community control and sentencing him to serve 36 months in prison. For the reasons discussed below, we affirm the trial court's decision.

{¶ 2} In January 2020, Smith was indicted on one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, and one count of criminal damaging

in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree. The charges arose after Smith reported to officers that he had kicked in his neighbor's door, took her dog, and placed several items from her home in her front yard. Officers responded to the neighbor's residence and discovered Smith inside the home with bullets and loaded firearms, and that he had damaged the property. Smith informed officers that he went into the home because "he believed there were weapons of mass destruction inside."

{¶ 3} Thereafter, in July 2021, Smith pled guilty to one count of burglary in violation of R.C. 2911.12(A)(3), a felony of the third degree. In September 2021, the trial court sentenced Smith to three years of community control. Pursuant to the terms of his community control, Smith was required to complete a treatment program with a mental health facility and to comply with all recommended treatment advised by the facility. Pending his intake at the mental health facility, Smith was held in the county jail. Smith was further prohibited from possessing or consuming any alcoholic beverages or illicit drugs during the period of community control and was required to submit to random drug screens. Smith was advised that a violation of the terms of his community control could result in the imposition of a prison term of up to 36 months.

{¶ 4} On May 23, 2022, Smith's probation officer filed an affidavit for community control violation, alleging that Smith had violated several conditions of his community control when he walked "through the streets of Milford wearing only his underwear and threatened to kill a door dash driver he came in contact with." After "exhibiting signs of auditory and visual hallucinations," Smith was transferred to a local hospital. Smith admitted to the community control violation and the trial court continued Smith on community control.

{¶ 5} On September 6, 2022, Smith's probation officer filed a supplemental affidavit for community control violation, alleging that Smith admitted he was using

marijuana again, and had used marijuana that morning. Smith's clinician at the mental health facility's suggested that smoking marijuana could exacerbate mental health conditions. As a result, Smith had been instructed on numerous occasions to stop smoking marijuana, including an order by the trial court at a prior hearing that Smith refrain from using marijuana. Thereafter, on September 30, 2022, the state moved to withdraw the supplemental community control violation, which was granted by the trial court.

{¶ 6} On May 24, 2023, Smith's probation officer filed another affidavit for community control violation, alleging that Smith tested positive for THC and admitted to smoking marijuana approximately two weeks prior. The affidavit stated that Smith had been instructed by the trial court and various officers that he may not use marijuana, despite having a medical marijuana card. Smith admitted to the community control violation and the matter was continued for sentencing.

{¶ 7} On August 2, 2023, Smith's probation officer filed a supplemental affidavit for community control violation, alleging that Smith tested positive for THC on June 22, 2023, and had admitted to using THC on June 28, 2023 and August 2, 2023. The affidavit detailed Smith's habitual violation of the trial court's direct orders and noted the several occasions Smith was instructed to refrain from the use of marijuana.

{¶ 8} On August 3, 2023, after the supplemental affidavit for community control violation was filed, the trial court held a hearing during which the affidavit's allegations were discussed. At the hearing, Smith did not dispute the facts of the supplemental affidavit, but claimed his actions did not constitute a violation of his community control. According to Smith, because he has a valid medical marijuana card, marijuana is not an "illicit drug" in violation of the terms of his community control. In response, the trial court stated its concerns with Smith's marijuana use, including its belief that Smith's marijuana use leads to "moments of psychosis" and overall, noncompliance with his community

control. According to the court, this belief was shared between the court, Smith's probation officers, and Smith's clinician at the mental health facility. The court explained that, "[w]hen [Smith] starts to use[,] . . . it keeps him awake. And when he stays awake, he acts like a fool. He runs around the neighborhood in his underwear. He threatens people and he walks into people's homes. That's what he does. And that's what the court's prohibiting and that's what it's not going to allow." The court continued by describing Smith as "a completely different person on community control" when he is not using, and specified that, although "he's in pain, . . . we feel like he's completely with us, that he follows" the requirements of community control.

{¶ 9} At the conclusion of the hearing, Smith admitted he tested positive for THC; admitted the court ordered him not to use THC, despite his doctor's recommendation; and conceded his use would not discontinue. Based upon Smith's admissions, the trial court entered guilty findings for the supplemental community control violations.

{¶ 10} The matter proceeded to a sentencing hearing on August 8, 2023. Smith's probation officers spoke at the hearing and described how Smith's behavior had worsened in connection with his marijuana use. One officer stated he had spent more time with Smith than any other probationer in his 26-year career, and at one point, believed Smith was behaving appropriately. Thereafter, Smith began using marijuana and was subsequently committed to a local hospital's psychiatric ward after exhibiting neurotic behavior. The probation officers described several concerning encounters with Smith throughout the case and concluded that he had "habitually demonstrated that he's not willing to follow [their] orders or [the court's] orders regardless of the number of opportunities" given to him.

{¶ 11} After hearing additional statements from Smith and his probation officers, including that Smith would not cease using marijuana due to his chronic back pain and

- 4 -

that it was not feasible to monitor his marijuana use while on community control, the trial court revoked Smith's community control and sentenced him to 36 months in prison with credit for time served.

{¶ 12} Smith now appeals, raising the following assignment of error for our review:

{¶ 13} THE TRIAL COURT ABUSED ITS DISCRETION IN REVOKING APPELLANT'S COMMUNITY CONTROL.

{¶ 14} On appeal, Smith argues the trial court abused its discretion in revoking his community control. Specifically, Smith claims the trial court erred in revoking his community control because holding a medical marijuana card is an affirmative defense to a community control violation. After our review of the record and the pertinent law, we find Smith's argument to be without merit.

{¶ 15} A defendant under community control is entitled to both a preliminary hearing and a final revocation hearing. *State v. Sefton*, 2023-Ohio-1318, ¶ 12 (12th Dist.). The purpose of the final revocation hearing is to give the defendant "an opportunity to be heard and to show" that he either did not violate his conditions or that certain mitigating circumstances "suggest that the violation does not warrant revocation." *State v. Grow*, 2021-Ohio-641, ¶ 7 (3d Dist.), citing *Morrissey v. Brewer*, 408 U.S. 471, 488 (1972). A trial court's decision revoking community control will not be disturbed on appeal absent an abuse of discretion. *State v. Smith*, 2020-Ohio-3235, ¶ 7 (12th Dist.). An abuse of discretion occurs when the trial court's attitude is unreasonable, arbitrary, or unconscionable. *Id.*

{¶ 16} In this case, the trial court revoked Smith's community control after concluding that Smith had abandoned the objectives of his community control sanction. This conclusion was based upon Smith's candid refusal to stop using marijuana while on community control, despite multiple orders to do so. On appeal, Smith does not dispute

the factual allegations of the community control violation affidavit or the supplemental affidavit, but instead argues his possession of a valid medical marijuana card mitigates his actions. That is, Smith claims that, because the Ohio legislature has authorized licensed health professionals to recommend medical marijuana to people like Smith for treatment to alleviate pain, the trial court erred in revoking his community control based upon his medical marijuana use.[1]

{¶ 17} In support, Smith relies upon a concurring opinion in *State v. Collins*, 2022-Ohio-2143 (8th Dist.). In *Collins*, the defendant was sentenced to community control, which included a condition that he would submit to random drug testing. *Collins* at ¶ 4. The defendant was later accused of violating his community control when he tested positive for THC. *Id.* at ¶ 5. The defendant moved the trial court to dismiss the community control violation and to clarify whether medical marijuana was an illegal drug for purposes of the terms of his community control. *Id.* After a hearing on the matter, the trial court issued a decision ordering the defendant to submit a drug screen but did not otherwise determine whether the defendant had violated the terms of his community control. In analyzing the defendant's appeal, the appellate court held that, because the trial court did not find that the defendant had violated his community control sanctions, there was no final appealable order. *Id.* at ¶ 14-18. As a result, the appellate court dismissed the appeal without addressing the merits. *Id.* at ¶ 18.

---

1. Marijuana continues to be illegal under federal law. 21 U.S.C. 841(a)(1) and 844. However, in 2016, Ohio House Bill 523 legalized medical marijuana in Ohio and created the Ohio Medical Marijuana Control Program, allowing people with certain medical conditions, upon the recommendation of an Ohio-licensed physician, to purchase and use medical marijuana. *See* R.C. Ch. 3796; *State v. Lynn*, 2023-Ohio-4429, ¶ 26 (5th Dist.). According to R.C. 3796.22, citizens who obtain an Ohio Medical Marijuana Control program registry identification card are authorized to use and possess medical marijuana, and will not be subject to arrest or prosecution for obtaining, using, or possessing medical marijuana. Thus, "the possession and use of marijuana in accordance with the statutes and rules promulgated thereunder is as lawful as the possession and acquisition of any prescription drug." *Lynn* at ¶ 38. In this case, the state does not dispute that the use of medical marijuana is legal in Ohio in certain circumstances or that Smith has a valid medical marijuana card.

**{¶ 18}** In the concurring opinion of *Collins*, Judge Celebrezze noted that "denying a defendant the use of a physician-authorized treatment for his chronic pain could possibly rise to the level of an unreasonable, arbitrary, and unconscionable action by the court." *Id.* at ¶ 26 (Celebrezze, P.J., concurring). The concurring opinion cited several cases from other appellate districts in Ohio which "have suggested that holding a medical marijuana card may be an affirmative defense to a community control violation." *Id.* at ¶ 27, citing *State v. Ryan*, 2021-Ohio-4059, ¶ 41 (11th Dist.); *State v. Owens*, 2021-Ohio-259, ¶ 17 (3d Dist.); *State v. Wertman*, 2019-Ohio-7, ¶ 13 (5th Dist.); *State v. Donoho,* 2018-Ohio-4950, ¶ 19 (11th Dist.).

**{¶ 19}** After our review, we conclude that neither Judge Celebrezze's concurring opinion in *Collins*, nor the cases cited therein, are dispositive of the issue in this case. Specifically, none of those cases involve a trial court revoking an appellant's community control based upon his prohibited use of medical marijuana. Instead, those cases state that a medical marijuana card *may* or *could possibly* be an affirmative defense to a community control violation, without addressing the merits of such an affirmative defense.

**{¶ 20}** In *Ryan*, a case cited by Judge Celebrezze in his concurring opinion and relied upon by the trial court in this case, the Eleventh District Court of Appeals considered whether prohibiting the possession of medical marijuana is within a trial court's discretion. In so doing, the court concluded that a trial court is well within its discretion to impose any variety of community control conditions, including a condition prohibiting legalized marijuana, if the condition is reasonably related to rehabilitation, has a relationship to the crime of which the offender was convicted, and relates to conduct that is criminal or reasonably related to future criminality. *Ryan* at ¶ 30-31; *see also State v. Dahlberg*, 2021-Ohio-550, ¶ 81-84 (11th Dist.); *State v. Talty*, 2004-Ohio-4888, ¶ 12.

**{¶ 21}** Relying upon its analysis in *Ryan*, which involved an offender's purchase

- 7 -

and stockpiling of medical marijuana while on community control, the Eleventh District later recognized a trial court's authority to restrict an offender's marijuana use as a condition of community control, even if the offender possessed a valid medical marijuana card. *State v. Bourne*, 2023-Ohio-2832, ¶ 29-30 (11th Dist.). Other courts in Ohio that have addressed the issue have likewise found that a trial court may restrict an offender's marijuana use when shaping community-control sanctions. *State v. Sanchez*, 2021-Ohio-1593, ¶ 20-21 (8th Dist.) (finding the trial court did not err in finding the offender had violated the conditions of his community control where he was informed he could not use illicit drugs and he admitted to using medical marijuana); *State v. Lynn*, 2023-Ohio-4429, ¶ 52-55 (5th Dist.) (finding that the absolute ban on using medical marijuana while on community control was overbroad given the facts of the case); *State v. Hobden*, 2020-Ohio-2877, ¶ 6-9 (9th Dist.) (trial court did not abuse its discretion when prohibiting the offender's use of medical marijuana as a condition of his community control). Although a blanket prohibition of medical marijuana in all community control cases is not supported by Ohio law, the above cases indicate that if there is some nexus or relationship between the offender's marijuana use and his underlying criminal behavior, the trial court may restrict the otherwise lawful use of medical marijuana. *Bourne* at ¶ 29; *Lynn* at ¶ 47-50.

{¶ 22} Turning to the facts of this case, neither party disputes that Smith has a valid identification card to use and possess medical marijuana for his pain management. Notwithstanding his possession of a valid medical marijuana card, the trial court specifically prohibited Smith from using marijuana while on community control in light of its historical exacerbation of his mental health problems and erratic behavior. On appeal, Smith claims the trial court's restriction of his marijuana use has a weak nexus to his "odd behavior" and is only tenuously related to the crime of which he was convicted.

{¶ 23} After our review, we find that Smith's argument lacks merit. Contrary to

Smith's claim otherwise, the record plainly reflects that Smith has demonstrated concerning behavior throughout the case due to his marijuana use and mental health issues. This includes the erratic behavior leading to his burglary conviction and community control violation in May 2022. Smith's clinician advised that marijuana use exacerbates Smith's mental health conditions, and his probation officers and the trial court also observed and described the significant changes in Smith's personality when using marijuana. Despite abundant evidence indicating that his erratic behavior is enhanced by his use of marijuana, Smith continues to use marijuana on a consistent basis. The impact of such use on Smith's psyche and mental health is evident when reviewing Smith's statements from the August 3 and August 8 hearings.

{¶ 24} When considering the statements from Smith, as well as his mental health clinician and probation officers, the record establishes a clear relationship and nexus between Smith's marijuana use and his criminal behavior. The trial court was required to weigh Smith's back pain against his increased risk of reoffending if he continued using marijuana. Additionally, it was necessary for the court to take into consideration Smith's known drug use when fashioning a community control sanction that would rehabilitate Smith and prevent future crime. That is, because Smith's use of marijuana has an obvious relationship with his criminal behavior, a restriction of such drug use is a reasonable (and necessary) component of ensuring that Smith does not reoffend. Therefore, Smith's possession of a valid medical marijuana card did not prohibit the trial court from restricting his marijuana use under the circumstances presented in this case.

{¶ 25} Having determined the trial court was authorized to restrict Smith's use of medical marijuana in this case, we must now address whether the trial court's revocation of Smith's community control was reasonable. It is well settled that a trial court does not abuse its discretion by revoking an offender's community control where the violation in

question was one over which the offender had control. *State v. Noonan*, 2019-Ohio-2960, ¶ 19 (12th Dist.). Additionally, "the right to continue on community control depends upon compliance with the conditions of community control and is a matter within the sound discretion of the trial court." *State v. Nichols*, 2022-Ohio-2895, ¶ 17 (12th Dist.).

{¶ 26} Here, each of Smith's community control violations involved actions that were entirely within his control. For example, at the August 2024 hearings, the trial court offered Smith an opportunity to seek alternate remedies to manage his pain. At that time, Smith was aware that one of the conditions of his community control was to refrain from the use of illicit substances. It was reiterated to Smith on numerous occasions that medical marijuana was considered an illicit substance, and his use of such substance was considered a violation of community control. Smith repeatedly tested positive for marijuana and did not contest his use of marijuana while on community control. To the contrary, Smith stated he would not cease using marijuana, regardless of the trial court's orders, and would not seek an alternate remedy to manage his back pain.

{¶ 27} Based upon these facts, including Smith's repeated, and intentional, violation of his community control, we find Smith deliberately failed to comply with the terms of his community control. Additionally, because we have already concluded that the trial court was permitted to restrict Smith's marijuana use, nothing in the record suggests that Smith's violations do not warrant revocation. Therefore, we find it was within the trial court's discretion to find that Smith had violated the conditions of his community control, and to revoke his community control sanctions as a result.

{¶ 28} Finding no merit to any of the arguments raised herein, Smith's sole assignment of error is overruled.

{¶ 29} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.