[Cite as *State v. Jordan*, 2025-Ohio-64.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2024-05-036 |
| | : | O P I N I O N |
| - vs - | | 1/13/2025 |
| | : | |
| RYAN JORDAN, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2022 CR 0860

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Nick Horton, Assistant Prosecuting Attorney, for appellee.

W. Stephen Haynes, Clermont County Public Defender, and Robert F. Benintendi, Assistant Public Defender, for appellant.

**BYRNE, P.J.**

{¶ 1} Ryan Jordan appeals from the decision of the Clermont County Court of Common Pleas, which revoked community control and imposed a prison sentence on one count of felony theft. For the reasons described below, we affirm.

**I. Factual and Procedural Background**

{¶ 2} In September 2022, a Clermont County grand jury indicted Jordan on one count of theft, a felony of the first degree ("Count One"), and one count of telecommunications fraud, a felony of the first degree ("Count Two"). According to the bill of particulars, between November 2020 and August 2021, Jordan assumed the "fake role" as a "go-between" for the victim and a fictitious female. Through this deception, Jordan stole over $1.5 million from the victim by manipulating the victim into sending him money.

{¶ 3} In September 2023, the state and Jordan entered into a negotiated plea agreement. Jordan agreed to enter a plea of guilty to Count One, theft, modified to a felony of the second degree. In return, the state agreed to dismiss Count Two. The parties further agreed on a restitution amount of $1,568,687.16. The state further agreed that it would not object to the court overcoming the presumption of a prison term.

{¶ 4} The matter proceeded to a plea and sentencing hearing. After engaging Jordan in a Crim.R. 11 plea colloquy, the court found that Jordan was entering his plea knowingly, intelligently, and voluntarily, and accepted his plea. The court thereafter found Jordan guilty.

{¶ 5} The court imposed a sentence of community control for five years. The court also ordered restitution in the amount of $1,568,687.16 and indicated that Jordan would need to pay that amount back during his five years on community control. The court commented as follows:

> So I'm going to put you on probation five years. It's a lot of restitution to pay back. So make sure that's -- the most important thing is to try to make the victim whole financially. That's my goal here. If I was interested in sending you to prison, I would not overcome the presumption. I'd just send you to prison. So take that for what it is.
>
> Hopefully, don't give me a reason that I have to send you to prison. Okay? So make sure you make payments and try to make this thing right.

- 2 -

{¶ 6} The court indicated its awareness that Jordan was working part time and asked if there was any reason why he could not be employed full time. Jordan stated that there was not. The court therefore ordered Jordan to be employed full time and indicated that there was a court program available to help him find full-time employment if needed.

{¶ 7} In January 2024, a Clermont County probation officer filed an affidavit alleging a community control violation. The officer averred that Jordan violated probation by failing to pay a supervision fee of $50 per month, restitution of $1,568,687.16, and all costs of prosecution. The officer averred that Jordan had been placed on a payment plan commencing September 22, 2023 and was to pay $26,948.68 each month. But since that date, Jordan had paid nothing.

{¶ 8} In February 2024, Jordan appeared before the court and admitted to the community control violation. The court found him guilty of the violation and continued the matter for sentencing.

{¶ 9} In April 2024, the court held a sentencing hearing. The record reflects that Jordan had an apparent medical issue on the first day of the hearing, just as the court was imposing sentence. The sentencing hearing was then completed two days later. At sentencing, the court recounted that Jordan had made no payments since he was sentenced in September 2023. The court stated that Jordan had appeared in February and admitted to the violation and the matter was continued for sentencing "with the anticipation that Mr. Jordan would come back to the table with substantial payment and a payment plan in hand."

{¶ 10} In mitigation, Jordan's attorney stated that he had "serious issues with paying" and "significant challenges." Counsel stated that Jordan was working 15 hours a week at AT&T and was living with his mother. He was currently applying for SSI and waiting on the results. Jordan's attorney represented that he had paid $300 that day,

- 3 -

which Jordan's mother had informed counsel was "the absolute most that they could pay."

{¶ 11} In allocution, Jordan apologized, stated that he was sick and was "trying my best to get my life back on track." Jordan stated that epilepsy and anxiety had resulted in him not being able to leave his house.

{¶ 12} The court asked Jordan what he did with the $1.5 million that he stole. Jordan did not answer the court's question but instead stated:

> I'm going through a drug phase, like, really bad, and I was just out with the wrong people. I was making the wrong decisions that I shouldn't have been making. I was raised way better than how I acted. Was raised a hundred times better than that.

{¶ 13} The court then asked Jordan about his current employment. Jordan stated he was working at AT&T as a retail sales representative and added that before he got sick he was "one of the highest retail sales rep [sic] for my entire company." Jordan stated he made $13 an hour and was working between 15 to 25 hours per week and that he could not "handle" working more than that.

{¶ 14} The court noted that Jordan had earned income and questioned how he could possibly have had no discretionary income in the six months since sentencing that he could have paid towards restitution. The court stated its belief that Jordan had manipulated the court when he was sentenced to community control and was still attempting to manipulate the court, including by paying $300 on the day of the hearing.

{¶ 15} The court heard testimony from Jordan's probation officer, who recounted the facts surrounding Jordan's failure to make any payments after he was placed on community control. The probation officer detailed his repeated efforts to have Jordan make a payment, without success.

{¶ 16} The court found that the facts established an unwillingness to pay rather than an inability to pay. The court found that community control was no longer consistent

with the purposes and principles of sentencing. The court revoked community control and imposed a prison term of four years.

{¶ 17} Jordan appealed, raising one assignment of error.

## II. Law and Analysis

{¶ 18} Jordan's sole assignment of error states:

THE TRIAL COURT ERRED IN REVOKING APPELLANT'S COMMUNITY CONTROL AND IMPOSING A PRISON TERM.

{¶ 19} Jordan argues that the record establishes that he was "unable to pay the required amount of restitution" and that the court improperly characterized him as unwilling to pay. He argues that the court ordered him to pay restitution in the amount of $26,948.68 per month and that this obligation was "untenable" given that he was only working part-time at a rate of $13 an hour. Jordan argues that his non-payment was not willful but was instead "impossible" due to his limited income and his medical condition.

### A. Standard of Review

{¶ 20} We review a court's decision to revoke community control under the abuse of discretion standard. *State v. Smith*, 2024-Ohio-2854, ¶ 15 (12th Dist.). The term abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Id*.

### B. Applicable Law

{¶ 21} A trial court may revoke community control and impose a prison term for an offender's failure to pay, however the court must make an inquiry into "the reasons for the failure to pay." *State v. Chambers*, 2003-Ohio-5991, ¶ 8 (12th Dist.), citing *Bearden v. Georgia*, 461 U.S. 660 (1983). It is unconstitutional to revoke community control and imprison an indigent offender where the record shows that the only reason for nonpayment is the inability to pay. *Id*. at ¶ 9. However, a court may imprison the offender

if the record shows that the offender refused to pay or failed to make sufficient bona fide efforts to acquire the resources to pay. *Id.* at ¶ 8. "Thus, the court must consider evidence of the probationer's ability to pay and there must be evidence that the failure to pay was willful or intentional." *Id.* at ¶ 9.

## C. Analysis

{¶ 22} The record supports the trial court's finding that Jordan willfully and intentionally refused to pay ordered restitution. Jordan failed to make a single payment after he was sentenced in September 2023. He made no payments despite the fact that he was working part time and living at home with his mother. He made no payments despite his probation officer repeatedly attempting to get him to make payments. The first time he made a payment was the date of his sentencing hearing, which the court construed as Jordan's attempt to manipulate the court.

{¶ 23} On appeal, Jordan claims that it was "impossible" for him to pay because his monthly restitution order far exceeded what he could possibly pay based on his income or claimed resources. However, the court was very clear in that it simply expected Jordan to pay *something* towards his restitution order. Jordan paid *nothing* until the day of sentencing. Moreover, Jordan's medical issues do not establish an inability to pay. The record is clear that Jordan was working part-time, despite his claimed medical issues.

{¶ 24} The record amply supports the trial court's conclusion that this was a willful and intentional failure to pay rather than an inability to pay. Accordingly, the court did not abuse its discretion in ordering Jordan to prison for his community control violation. We overrule Jordan's sole assignment of error.

{¶ 25} Judgment affirmed.

HENDRICKSON and PIPER, JJ., concur.

- 6 -